IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RED GIANT, INC., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. H-07-2657 |
| | § | |
| MOLZAN, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**<u>MEMORANDUM OPINION</u>**

Pending before the court[1] is Plaintiffs' Motion for Summary Judgment (Docket Entry No. 29).  The court has considered the motion, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Plaintiffs' motion.

## I. Case Background

Plaintiffs brought this action for willful copyright infringement arising out of the unauthorized performance of the musical compositions "Do It Again," "Caught Up in the Rapture," "At Last," and "Ain't No Mountain High Enough" at a restaurant facility allegedly owned by Defendants.  Defendant Bruce Molzan ("Defendant Bruce"), an individual, is the sole shareholder of Defendant Molzan, Inc. ("Defendant Molzan"), a corporation that owns and

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 45.

operates restaurants.[2]

Plaintiffs are members of the American Society of Composers, Authors, and Publishers ("ASCAP"), a voluntary membership association to which Plaintiffs granted a nonexclusive right to license nondramatic performance of their copyrighted musical compositions.[3]   Plaintiffs seek statutory damages, costs and attorney's fees, and injunctive relief under the Copyright Act, 17 U.S.C. §§ 502(a), 504(c)(1), and 505, as well as interest under 28 U.S.C. § 1961 for the alleged infringements.[4]

The restaurant facility where the alleged infringements took place is physically located in the 900 block of Westheimer Road, Houston, Texas 77006.[5]   It is part of a three-building complex located on one property, each having a separate address.[6]   One building is an office; one is a restaurant called Ruggles Grill; and the third building is the facility at issue, a dining area called the Piano Room ("Piano Room") that, at one time, featured

---

[2]     App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. C, Deposition of Bruce Molzan, pp. 9, 13.

[3]     App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. G, Declaration of Mary A. Jenkins, p. 2.

[4]     Plaintiffs' Motion for Summary Judgment, Docket Entry No. 29, p. 1.

[5]     App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. C, Deposition of Bruce Molzan, p. 10.

[6]     Id.; Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 34, p. 2.

live entertainment.[7]  Ruggles Grill is connected to the Piano Room
by a covered walkway.[8]  Additionally, Ruggles Grill has a sign on
the front that reads "The Ruggles Grill."[9]  The Piano Room does not
contain a sign designating its name.[10]

The Piano Room is referred to by several different names in
the court record.  Due to the proximity of the two buildings to
each other and the lack of separate signs, Plaintiffs refer to the
Piano Room as Ruggles Grill.[11]  Defendants refer to the Piano Room
by its prior name, Maxie & Jake's.[12]  Evidence submitted to the
court uses the names Ruggles Grill, Maxie & Jake's, and Club
Flamingo, another former name of the Piano Room, interchangeably.[13]
For the sake of clarity and consistency, the court will use the
name "Piano Room" to refer to the site of the alleged infringement,
regardless of whether documents or testimony refer to the location

---

[7]    App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31,
Ex. C, Deposition of Bruce Molzan, p. 10.

[8]    App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31,
Ex. H, Declaration of Maria Kessler, p. 2.

[9]    Id.

[10]   Id.; App. to Plaintiffs' Motion for Summary Judgment, Docket Entry
No. 31, Ex. C, Deposition of Bruce Molzan, p. 11.

[11]   App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31,
Ex. B, Declaration of James Allen Casanova, pp. 1-2; Id. at Ex. H, Declaration
of Maria Kessler, p. 2.

[12]   Defendants' Response to Plaintiffs' Motion for Summary Judgment,
Docket Entry No. 34; App. to Plaintiffs' Motion for Summary Judgment, Docket
Entry No. 31, Ex. C, Deposition of Bruce Molzan, p. 12.

[13]   App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31.

by other names.[14]

According to Douglas Jones ("Mr. Jones"), ASCAP's manager of litigation services for general licensing, Defendants were licensed by ASCAP to play music in ASCAP's library from February 4, 1998, until the termination of their license on June 15, 2006.[15]

On May 5, 2006,[16] ASCAP sent Defendants a letter via Federal Express notifying them that their account was delinquent.[17]  Then, on May 16, 2006, ASCAP sent Defendants a second letter via certified mail informing them that, if their delinquent account was not paid, ASCAP would terminate the licensing agreement.[18] The letter explained that Defendants could be held liable for copyright infringement if they continued to play ASCAP's members' songs without a license.[19]  Finally, on September 7, 2006, ASCAP sent Defendants a third letter via certified mail offering to resolve the delinquent account and reinstate the licensing agreement upon

---

[14]    The court only uses the name "Piano Room" for the private dining facility on Defendants' property.  The court does not substitute the name Piano Room for the Ruggles Grill restaurant.

[15]    App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. D, Declaration of Douglas Jones, p. 4.

[16]    The record indicates that Plaintiffs had contacted Defendant Bruce either by letter or by phone in 1997-2000, 2002, 2004, and 2006.  App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. D, Declaration of Douglas Jones, attach. 31-6.  Since the record contains several gaps in time between contacts, the court only considers Plaintiffs' contacts with Defendant Bruce that took place in 2006, the year leading up to this litigation.

[17]    Id. at attach. 31-6, p. 23.

[18]    Id. at p. 20.

[19]    Id.

4

payment of the back due fees.[20]  ASCAP again warned Defendants about copyright infringement.[21]  Subsequently, Defendants' ASCAP license was terminated due to a default in payment of fees totaling $2,400.47.[22]  However, Defendants continued to provide music at the Piano Room for their patrons.[23]

On September 23, 2006, ASCAP sent an investigator to the Piano Room to observe and make a list of songs performed.[24]  While at the Piano Room, the investigator noted that Defendants' entertainer, The Mark Dini Band, performed "Do It Again," a song in ASCAP's library.[25]  On October 22, 2006, the investigator reported that he heard the songs "Caught Up in the Rapture," "At Last," and "Ain't No Mountain High Enough" played.[26]  On January 20, 2008, ASCAP sent another investigator to the Piano Room.[27]  During this visit, the investigator reported that she heard the songs "Ribbon in the Sky,"

---

[20]     Id. at p. 11.

[21]     Id.

[22]     App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. D, Declaration of Douglas Jones, p. 4.

[23]     App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. C, Deposition of Bruce Molzan, p. 8.

[24]     App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. B, Declaration of James Allen Casanova, p. 2.

[25]     Id. at p. 3.

[26]     Id.

[27]     App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. H, Declaration of Maria Kessler, p. 2.

"My Girl," "Send in the Clowns," and "Always and Forever" played.[28] Plaintiffs own the copyrights to all of these songs.[29]  Plaintiffs filed this suit on August 17, 2007.[30]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Kee v. City of Rowlett, Tex.</u>, 247 F.3d 206, 210 (5th Cir. 2001). The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Kee</u>, 247 F.3d at 210.  If the movant carries this burden and the party opposing summary judgment fails to raise a fact issue, the court may decide the case as a matter of law.  See <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888-89 (1990) (ruling that the movant for summary judgment is entitled to at "least one sworn averment of [the disputed] fact before the lengthy process of litigation

---

[28]    <u>Id.</u> at p. 3.  Plaintiffs did not include these songs in their complaint.

[29]    App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. G, Declaration of Mary A. Jenkins, p. 2.

[30]    Plaintiffs' Complaint, Docket Entry No. 1.

continues").

### III. Analysis

**A. Copyright Infringement**

A copyright owner has the exclusive right of public performance of his musical composition. 17 U.S.C. § 106(4). A plaintiff can prove infringement of this right by demonstrating that: 1) the plaintiff owns valid copyrights to the songs in question; 2) the defendant publicly performed the compositions; and 3) the defendant did not obtain permission to perform the songs. See Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc., 712 F. Supp. 1257, 1259 (S.D. Tex. 1989), aff'd, 915 F.2d 1567 (5th Cir. 1990)(dividing the first element into: 1) originality and authorship of the work; 2) compliance with the required formalities of the Copyright Act; and 3) ownership of the copyrights, but noting that copies of the copyright registration and subsequent assignments are prima facie evidence of these three elements).

In connection with their motion, Plaintiffs argue that summary judgment is proper because, as a matter of law, they can establish all three elements required to prevail in a copyright claim. In response, Defendants claim that summary judgment is improper because Plaintiffs cannot present sufficient evidence to establish copyright infringement as a matter of law.

Turning to the first element, Plaintiffs must present evidence that establishes ownership of the copyrighted songs in question.

To this end, Plaintiffs submitted the certificates of copyright registration for each song and assignment agreements between Plaintiffs and ASCAP for the copyrighted materials.[31]  Defendants present no contrary evidence in response.  Because copyright registration certificates constitute prima facie evidence of ownership and Defendants have not pointed the court to any evidence suggesting Plaintiffs do not own the copyrighted songs, the court finds that Plaintiffs have met their burden of proof for the first element.

Next, the court considers whether Plaintiffs submitted sufficient evidence to establish that Defendants publicly performed the songs in question.  The parties' dispute centers on this element.  The issue, raised for the first time by Defendants almost two years after the complaint was filed, is whether Defendant Molzan owns and operates the Piano Room as a part of Ruggles Grill.[32]  Plaintiffs allege that the Piano Room, while housed in a separate building, is part of Ruggles Grill.[33]  To support their position, Plaintiffs submitted to the court over fifty pages of public records, two supplemental declarations from ASCAP's

---

[31]     App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. G, Declaration of Mary A. Jenkins, attachments 31-12, pp. 1-68 (certificates of copyright registration and other legal paperwork regarding the ownership of the copyrights for the songs "Do It Again," "Caught Up in the Rapture," "At Last," and "Ain't No Mountain High Enough").

[32]     Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 34, pp. 2-3.

[33]     Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 44, pp. 2-6.

investigators, photos of the property, and receipts of food purchased at the Piano Room with "Ruggles Grill" printed on them.[34]

James Allen Casanova ("Mr. Casanova"), the ASCAP investigator whose report is the basis for this litigation, provides the factual basis for his conclusion that the Piano Room was part of Ruggles Grill.[35] Mr. Casanova testified that, on the date of his visit to the Piano Room, he only observed one sign that read "The Ruggles Grill" and no other indicators that the Piano Room was not part of Ruggles Grill.[36] Mr. Casanova stated that although Ruggles Grill and the Piano Room were located in separate structures, they shared a central valet and a single kitchen.[37] Additionally, Mr. Casanova testified that the receipts he received for his food and beverage purchases contained the header: The Ruggles Grill, 903 Westheimer, (713) 524-3839.[38]

In response, Defendants claim, without any support, that the Piano Room was not part of Ruggles Grill.[39] Instead, Defendants claim that because the Piano Room has its own street address, is

---

[34]   Id. at attachs. 44-2-44-7.

[35]   Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment, Ex. F, Supplemental Declaration of James Allen Casanova, p. 2.

[36]   Id.

[37]   Id.

[38]   Id. at p. 3.

[39]   Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 34, pp. 2-3 (spending less than a page and a half alleging that the Piano Room is not part of Ruggles Grill, but lacking competent evidence to support the proposition).

separated from Ruggles Grill by a driveway, and has a its own occupancy permit, it is a separate entity from Ruggles Grill.[40] Defendants admit to the ownership of 903 Westheimer Road.[41]   The court notes that Defendants do not deny ownership of the Piano Room.[42]

Defendants argue that the alleged infringements occurred at the Piano Room, not Ruggles Grill.[43]   Thus, Defendants argue, they should not be held liable for any infringing performances that occurred at the Piano Room.[44]   Defendants' claim rests on the fact that Plaintiffs used the name "Ruggles Grill" in their complaint, summary judgment motion, and supporting documents.[45]

Testifying on behalf of himself and Defendant Molzan, Defendant Bruce admitted that Ruggles Grill, located at 903 Westheimer, was compromised of three buildings: an office, a restaurant, and a dining facility.[46]   Defendant Bruce further stated that the dining facility had been referred to as "Maxie and Jake's" or "Club Flamingo," and was currently referred to as the "Piano

---

[40]   Id. at p. 2.

[41]   Id.

[42]   See id.

[43]   Id.

[44]   Id.

[45]   Id.

[46]   App. to Plaintiffs' Motion for Summary Judgment, Docket No. 31, Ex. C, Affidavit of Bruce Molzan, pp. 10-13.

Room."[47]   Although Defendant Bruce  provided evasive testimony on ownership of the Piano Room, he admitted that the Piano Room was part of the three buildings owned by Defendant Molzan as part of Ruggles Grill.  See Hulsey v. State of Tex., 929 F.2d 168, 171 (5th Cir. 1991)(stating that summary judgment is proper on matters expressly admitted by the opposing party).

In addition to Defendant Bruce's affidavit, the certified public records show that Ruggles Grill and the Piano Room are owned and operated by Defendants.  The Harris County Assumed Name Records confirm that 907 Westheimer is the location of the Piano Room.[48] Additionally, it indicates that the address of the Piano Room's registered office is 903 Westheimer Road.[49]  Defendants' 2008 Texas Alcoholic Beverage Commission permit names 903-907 Westheimer as "The Ruggles Grill/[Piano Room]" and lists Defendant Molzan on the permit.[50]  Defendant Molzan's Texas Mixed Beverage Gross Receipts Tax Report shows "The Ruggles Grill/[Piano Room]" as being located

---

[47]     Id.

[48]     Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket No. 44, Ex. A, Assumed Name Records, p. 2.  Plaintiffs submitted three certified copies of the Harris County Assumed Name Records.  The most current record is dated February 16, 1999, however, it indicates the business address as 905 Westheimer Road.  Since this litigation does not concern 905 Westheimer, the court turned to the next most recent record, filed January 31, 1992.

[49]     Id.

[50]     Id. at Ex. B, Texas Alcoholic Mixed Beverage Commission Permit, p. 2.

at 903 Westheimer Road.[51]  Finally, the 2006 Harris County Appraisal District Records reflect that the property located at 907 Westheimer is known as "[Piano Room]-Ruggles Grill" and is owned by Defendant Bruce.[52]  Defendants have had nearly two years to submit to the court competent summary judgment evidence to support their claim that the Piano Room is not owned by them.  They have failed to do so.

Based on the public records submitted, the court finds that the Piano Room is owned, operated, and controlled by Defendants.  If Defendants can produce, within ten days of the date of this decision, competent summary judgment evidence disproving the ownership of the Piano Room, located at 907 Westheimer, the court will reconsider its decision.

Having found that Defendants own the Piano Room, the court will now address whether the songs in question were publicly performed by Defendants.  Plaintiffs allege that four songs--"Do It Again," "Caught Up in the Rapture," "At Last," and "Ain't No Mountain High Enough"--were played at the Piano Room.[53]  In order to document these alleged infringements, ASCAP sent an

---

[51]   Id. at Ex. C, Texas Mixed Beverage Gross Receipts Tax Report, pp. 2-4, 9-14, 16-35.

[52]   Id. at Ex. D, Harris County Appraisal District Records, p. 5.

[53]   Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Docket Entry No. 33, pp. 1-2.

investigator, Mr. Casanova, to the Piano Room.[54]  According to Mr. Casanova's testimony, he was engaged by ASCAP to visit the Piano Room on two separate occasions and write down the names of all the songs that were performed there.[55]  After each visit, Mr. Casanova prepared a report for ASCAP.[56]  According to Mr. Casanova, in his first report he noted that the song "Do It Again" was played at the Piano Room and in his second report he noted that the songs "Caught Up in the Rapture," "At Last," and "Ain't No Mountain High Enough" were played there.[57]

Defendants only deny that the infringements occurred at Ruggles Grill.[58]  Defendants do not present any evidence that the alleged infringements did not occur at the Piano Room.  Therefore, the court finds that Plaintiffs have met their burden of proof as to the second element of copyright infringement.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (holding that "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

---

[54]    See id. at p. 7; App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. B, Declaration of James Allen Casanova, pp. 1-2.

[55]    App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. B, Declaration of James Allen Casanova, pp. 1-2.

[56]    Id. at pp. 2-3.

[57]    Id. at p. 3.

[58]    App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Defendants' Response to Plaintiffs' First Request for Admissions Nos. 1-22, Ex. A, p. 3.

Finally, the court will consider the third copyright infringement element: whether Defendants had permission to perform the songs in question. Defendants admit that they did not have permission to play the songs in question, either directly from Plaintiffs or through a license with ASCAP.[59] Therefore, the court finds that the third element of copyright infringement has been established.

After reviewing the entire record, the court finds that Defendants presented nothing more than unsubstantiated denials of each element of copyright infringement. Defendants cannot circumvent justice based on a strip of driveway, separate street address, and occupancy permit--none of which proves that the Piano Room is not part of Ruggles Grill. Id. Plaintiffs have submitted enough evidence to meet their burden on all three elements of copyright infringement and are entitled to judgment as a matter of law.

**B. Joint and Several Liability**

All participants in a copyright infringement case are subject to joint and several liability. Fermata Int'l Melodies, Inc., 712 F. Supp. at 1262. In order to hold a corporate officer liable, the court must find: 1) that the officer had a financial stake in the infringing activity and 2) the officer had the ability and right to supervise the activity. Id.

---

[59]     Id. at pp. 1-3.

Plaintiffs argue that, as principal stockholder of Defendant Molzan, Defendant Bruce had both a financial stake in the infringements and the primary responsibility for the control, management, operation and maintenance of Defendant Molzan.[60]

In support of their arguments, Plaintiffs submitted the deposition of Defendant Bruce.  There, Defendant Bruce testified that he earned an annual salary of approximately $80,000 in 2005 and 2006 from Defendant Molzan.[61]  He also admitted that he owned the entire interest in Defendant Molzan.[62]

In response, Defendant Bruce argues that he should not be held liable because he had no knowledge that ASCAP's songs were being played at the Piano Room.[63]  Defendants cite as evidence that Defendant Bruce was only the chef at Ruggles Grill and that his former wife, Susan Molzan, had been in charge of the management of Defendant Molzan, Inc., before their divorce in 2006.[64] Furthermore, Defendants assert that Defendant Bruce "spent ninety-five percent of his time cooking[, and] he was not familiar with

---

[60]    Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Docket Entry No. 33, p. 13.

[61]    Id. at p. 21.

[62]    App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. C, Deposition of Bruce Molzan, p. 9.

[63]    Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 34, pp. 3-4.

[64]    Id. at p. 4.

what was played at [the Piano Room]."[65]

Regarding the first element, the court finds that Defendant Bruce had a financial stake in the activities at restaurants owned by Defendant Molzan. Not only did Defendant Bruce's testimony reveal that he received $80,000 in salary from Defendant Molzan, but he also owned the entire interest in Defendant Molzan.

Looking to the second element, the court finds that Defendant Bruce had the ability to control the infringing activity. In their brief, Defendants concede that Defendant Bruce "took the steps necessary to insure that Ruggles Grill was in compliance [with copyright law] by obtaining the music through a satellite receiver."[66] Defendant Bruce's deposition supports this concession.[67] This evidence shows that Defendant Bruce was more than just a chef and that he did have some control over Defendant Molzan's music providers. Defendant Bruce also testified that he was aware that Defendant Molzan had occasionally paid bands to perform at the Piano Room on weekends.[68]

Also, Defendant Bruce admitted that ASCAP made several attempts, both in writing and personally, to contact him and

---

[65]    Id.

[66]    Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 34, p. 4.

[67]    App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. C, Deposition of Bruce Molzan, pp. 35-36.

[68]    Id. at p. 9.

16

explain copyright law and Plaintiffs' rights.[69]   Defendant Bruce
made the decision to ignore ASCAP.[70]   Accordingly, it follows that
Defendant Bruce had the right and ability to control the infringing
activities at the Piano Room, regardless of whether or not he chose
to exercise that right or delegate it to another employee of
Defendant Molzan.

Therefore, the court finds that Defendant Bruce and Defendant
Molzan are jointly and severally liable for the copyright
violations complained of in this case.

## IV. Relief

Upon proof of liability, a court may award the copyright owner
statutory damages, attorney's fees and costs, injunctive relief,
and interest.  17 U.S.C. §§ 502, 504, 505.

### A. Statutory Damages

The owner of a copyright may elect to recover statutory
damages under 17 U.S.C. § 504, rather than proving actual damages
and profits.  Statutory damage amounts range from $750 to $30,000
per infringement.  17 U.S.C. § 504(c)(1).  If the court finds that
the infringement was willful, that is, if the court finds that the
defendant knew his actions constituted infringement, the court may

---

[69]     App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. A, Defendants' Response to Plaintiffs' First Request for Admissions, pp. 2-3.

[70]     See id.  According to ASCAP's sales records, a sales associate contacted Defendant Bruce on November 11, 2005 about paying the requested licensing fee and Defendant Bruce stated that "[ASCAP] should sue him."  App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. D, Declaration of Douglas Jones, attach. 31-6, p. 27.

increase the award to as much as $150,000.  17 U.S.C. § 504(c)(2); Broadcast Music, Inc. v. Xanthas, Inc., 855 F.2d 233, 236 (5th Cir. 1988).

Plaintiffs request statutory damages in the amount of $7,500 per infringement for a total of $30,000, costs and attorney's fees in the amount of $39,830.75, post-judgment interest, and injunctive relief.  Defendants object to the amounts requested as excessive for this particular case and claim an injunction is not necessary.

The evidence shows that Defendants were not licensed for the public performance of compositions in the ASCAP repertory. Plaintiffs also have shown that ASCAP provided Defendants with numerous opportunities to obtain an ASCAP license and that ASCAP explained to Defendants the legal repercussions of infringing their copyrights.  Through their investigation, ASCAP representatives discovered that Defendants regularly sponsored live music performances at the Piano Room on the weekends.[71]  Additionally, Plaintiffs submitted evidence that Defendants actually played more musical compositions from the ASCAP repertoire on other dates than those specifically named in their complaint.[72] The court recognizes that none of this is proof positive that Defendants violated the copyrights of musical compositions in the ASCAP repertory in

---

[71]      In connection with their reply, Plaintiffs submitted a flyer advertising live music at the Piano Room on Saturdays. App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. H, Declaration of Maria Kessler, attach. 31-13, p. 15.

[72]      See id. at p. 3.

addition to September 23, 2006, and October 22, 2006.  However, the evidence does call into question Defendants' candor with respect to requesting innocent infringer status.

The record indicates that Plaintiffs have had a long, troublesome relationship with Defendants, that Plaintiffs had given Defendants ample time and warning to renew their licensing agreement with ASCAP, and that Plaintiffs were willing at one point to work with Defendants to come to an agreement on fees. Defendants refused to purchase the required license, ignored and avoided communications from ASCAP, and, despite the many warnings, sponsored illegal activity at the Piano Room on September 23, 2006, and October 22, 2006, after their license expired.[73]

Plaintiffs also submitted evidence that Defendants owed unpaid license fees under their prior ASCAP license in the amount of $2,400.47, accrued finance charges of $904.27, and unpaid license fees from June 15, 2006, to September 13, 2008, in the amount of $4,564.55.[74]  In addition, Plaintiffs assert that ASCAP incurred out-of-pocket expenses of $942.12 in obtaining evidence of copyright infringement.[75]

Based on the willfulness of Defendants' conduct, the court

---

[73]    App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. D, Declaration of Douglas Jones, p. 4.

[74]    Id. at p. 7; Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Docket No. 33, pp. 11-12.

[75]    App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. D, Declaration of Douglas Jones, p. 7.

finds that a statutory award above the minimum is required to impress upon Defendants the seriousness of their conduct. The court finds $7,500 for each of the four infringements, for a total of $30,000, to be an appropriate award.

**B. Attorney's Fees and Costs**

The Copyright Act provides for the imposition of costs and attorney's fees in favor of the prevailing party. 17 U.S.C. § 505. The award of attorney's fees and costs is left to the court's discretion. Fogerty v. Fantasy, Inc., 510 U.S. 517, 533-34 (1994). According to the Fifth Circuit, attorney's fees in a copyright action are "discretionary but routinely awarded." Hogan Sys., Inc. v. Cybresource Int'l., Inc., 158 F.3d 319, 325 (5th Cir. 1998)(citing McGaughey v. Twentieth Century Fox Film Corp., 12 F.3d 62, 65 (5th Cir. 1994)).

Plaintiffs request $39,830.75 in attorney's fees.[76] Defendants argue that the attorney's fees requested by Plaintiffs are unreasonable and unnecessary.[77] Defendants allege that Plaintiffs' unusual bulk of filings, the repetitive nature of exhibits, and the lack of opposition by Defendants reveal the unreasonable and unnecessary nature of "most of the hours charged."[78]

---

[76]    Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Docket No. 33, p. 21.

[77]    Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket No. 34, p. 6.

[78]    Id.

Defendants' allegations are without merit.   In fact, Plaintiffs suffered considerable and costly set backs due to Defendants' untimely opposition to Plaintiffs' claims.   It was Defendants' decision to not purchase an ASCAP license that resulted in this lawsuit.   It was also Defendants' decision to refuse to sign a negotiated settlement agreement, not just once, but twice, a factor that resulted in additional fees being incurred.   The court finds that this is an appropriate case for the award of attorney's fees.

In determining reasonable attorney's fees, this court must employ a two-step process:

> Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers.   Then, the district court must multiply the reasonable hours by the reasonable hourly rates.   The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case.

La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995), cert. denied, 516 U.S. 862 (1995) (internal citations omitted).   The party requesting attorney's fees has the burden to demonstrate entitlement to the fees and to document the hours expended and the hourly rate.   Id.

The principle underlying this "lodestar" framework is that the attorney's fees awarded should be reasonable.   Reasonableness is determined by consideration of twelve factors.   Von Clark v. Butler, 916 F.2d 255, 258 (5th Cir. 1990).   These factors are: (1)

the time and labor involved; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship between the attorney and the client; and (12) awards in similar cases. Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), overruled on other grounds, Blanchard v. Bergeron, 489 U.S. 87 (1989).

First, the court will look at the number of hours expended in preparing the case and then at the hourly rate billed for each hour. Jeff McDaniel ("Mr. McDaniel"), Plaintiffs' counsel, submitted invoices covering the time period from May 14, 2007, three months before this case was filed, through February 13, 2009, the date the Motion for Summary Judgment was filed. The invoices reveal that Mr. McDaniel billed 57.4 hours in connection with this case.[79] Mr. McDaniel's paralegal billed 95.4 hours working on this case.[80] After reviewing the invoices, the court finds that all of the time spent prior to the filing of this case up until the date

---

[79]     App. To Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. E, Declaration of Jeff A. McDaniel, attach. 31-10, pp. 7-23.

[80]     Id.

Plaintiffs filed for summary judgment to be reasonable.

Next, the court will consider the hourly rates charged by Mr. McDaniel and his paralegal. In his declaration, Mr. McDaniel affirmed that his billing rate was $374.00 per hour and the billing rate for his paralegal was $153.00 per hour.[81] The court finds these rates reasonable, however, some deductions are warranted.

First, a $500 credit should be applied against the attorney's fees for an investigation into another establishment called "Ruggles Grill" in Austin, Texas.[82] Second, Mr. McDaniel admits that on one invoice his firm incorrectly charged Plaintiffs a higher rate of $190.00 per hour for his paralegal, resulting in $44.40 in overcharges. Finally, Mr. McDaniel suggests the court exclude $22.96 from the total fees for work done by second paralegal in order to limit the firm's billings for this case to two professionals.[83] Plaintiffs suggest a total deduction of $567.36 from the attorney's fees request.

In addition to the deductions above, the court also finds a discrepancy between Plaintiffs' total calculation for fees billed and the court's calculation. Plaintiffs submitted to the court a total of $36,131.36 for hours actually billed.[84] However, the court

---

[81]    App. To Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. E, Declaration of Jeff A. McDaniel, p. 2.

[82]    Id.

[83]    Id.

[84]    Id. at p. 4.

calculated $36,063.80 for hours actually billed.  Therefore, using the court's total for hours actually billed and subtracting $567.36 in excess fees, the court finds that Plaintiffs are entitled to $35,496.44 in attorney's fees.

The court must next determine whether the lodestar amount should be adjusted based on the <u>Johnson</u> factors.

<u>Time and labor involved</u>:  This factor was subsumed in the court's calculation of the lodestar amount.  <u>See</u> <u>Shipes</u>, 987 F.2d at 320.

<u>Novelty and difficultly of the issues</u>:  Although this case is a copyright action, and hence required some specialized knowledge, it did not involve novel or complex copyright issues.  No adjustment of the lodestar is necessary.

<u>Skill required to perform the legal services properly</u>:  This factor is inapplicable to this case.

<u>Preclusion of other employment due to this case</u>:  There is no evidence before the court suggesting that this was a factor in this case.  No lodestar adjustment can be made on this basis.

<u>Customary fee</u>:  This factor was incorporated in the court's calculation of the lodestar amount.

<u>Whether fixed or contingent</u>:  This factor is not relevant.

<u>Time limitations imposed by the client or circumstances</u>: There is no argument or evidence that time constraints were a factor in this case.

24

Amount involved and results obtained: The lodestar amount included all reasonable fees through the date that the summary judgment motion was filed. Defendants claim that the attorney's fees requested are excessive because they exceed the damages sought, Defendants "assiduously avoided taking any action beyond that required by the Court Rules," and Defendants did not pose any opposition to Plaintiffs in this case.[85] The court does not agree with Defendants' arguments. Nearly $9,500 of Plaintiffs' attorney's fees resulted from Defendants' inaction. Plaintiffs incurred almost $2,000 of attorney's fees when Defendants failed to timely file an answer to Plaintiffs' original complaint.[86] Plaintiffs also incurred approximately $7,500 in fees in the unsuccessful attempts to resolve the case by settlement.[87] Therefore, the court finds that Plaintiffs' request for attorney's fees is not excessive.

Experience, reputation, and ability of counsel: Plaintiffs' counsel is an experienced intellectual property practitioner. As this factor was taken into consideration in determining the appropriate hourly rate, no lodestar adjustment needs to be made on this basis.

---

[85]   Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket No. 34, p. 6.

[86]   Plaintiffs' Memorandum in Support for Plaintiff's Motion for Summary Judgment, Docket No. 33, p. 21.

[87]   Id.

Undesirability of the case:  There is no evidence that this is a factor in this case.

Nature and length of the professional relationship:  There is no evidence that this is a factor warranting an adjustment of the lodestar.

Awards in similar cases:  The court finds the award of attorney's fees in this case is reasonable under the circumstances and consistent with other awards in similar cases.

There is a strong presumption that the lodestar figure represents a reasonable attorney's fee. R.M. Perez & Assocs., Inc. v. Welch, 960 F.2d 534, 541 (5th Cir. 1992).  After carefully considering all of the Johnson factors, the court determines that their weight is accurately reflected in the lodestar amount and that no departure is necessary.

After reviewing the attorney's bills to Plaintiffs, the court finds that the lodestar amount for attorney's fees should equal $35,496.44.

Plaintiffs also seek recovery for their costs.  As these disbursements for filing fees, service of process fees, photocopying, long distance telephone, fax, delivery fees, postage, and legal research appear to be reasonable, the court finds for Plaintiffs in the amount of $1,766.75.

Plaintiffs seek an additional $2,500 for anticipated fees and costs from the date of the summary judgment motion to the present.

Since the filing of Defendants' response, the only case activity after the summary judgment motion was filed, as reflected in the court's record, was Plaintiffs' three requests for an extension of time to file their reply and the actual filing of their reply. Therefore, the court declines to award an additional $2,500 in fees. Plaintiffs may submit bills for the period between February 13, 2009, when the Motion for Summary Judgment was filed, and the date of this Memorandum for the court's review.

## C. Injunction

The Copyright Act's remedies for infringement allow a court to award "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "When an infringement occurs, the copyright owner is entitled to an injunction prohibiting further infringing performances." <u>Controversy Music v. Down Under Pub Tyler, Inc.</u>, 488 F.Supp.2d 572, 577 (E.D. Tex. 2007). According to the declaration of Mr. Jones, ASCAP representatives tried numerous times to persuade Defendants to renew their licensing agreement with ASCAP, but Defendants repeatedly refused to comply.[88] In addition, Plaintiffs submitted three letters sent to Defendants warning them of the expiration of their license and the possibility of infringement, yet Defendants chose to ignore the warnings.

---

[88]    App. to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 31, Ex. D, Declaration of Douglas Jones, p. 4.

Defendants argue that an injunction would require the enjoined party to "know who all the ASCAP members are, or were, and what music each owned and copyrighted."[89]  ASCAP, however, has available a searchable database both online and on CD-ROM that would allow Defendants to comply with both an injunctive order and copyright law.[90]  The online database may be accessed for free at http://www.ascap.com/ace/ and the CD-ROM may be purchased for five dollars from ASCAP.[91]  Defendants also argue that an injunction is not necessary because the Piano Room was damaged by Hurricane Ike on September 13, 2008, and has remained closed ever since.[92]  In their reply, Plaintiffs point out that in photographs submitted to the court of the Piano Room and Ruggles Grill, there is a banner in front of the restaurants indicating that they will be "re-opening soon."[93]

Taking all of the evidence above into account, the court finds that injunctive relief is appropriate.

## V.  Conclusion

---

[89]   Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 34, p. 5.

[90]   Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 44, p. 9.

[91]   Id.; ASCAP ACE Title Search, http://www.ascap.com/ace/ (last visited July 16, 2008).

[92]   Id. at p. 6.

[93]   Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 44, p. 9; Id. at Ex. E, attach. 44-6, p. 4; Id. at Ex. F, attach. 44-7, p. 4.

For the foregoing reasons, the court **GRANTS** Plaintiffs' Motion for Summary Judgment.   The court **AWARDS** Plaintiffs statutory damages in the amount of $7,500 per infringement for a total of $30,000, attorney's fees and costs in the amount of $35,496.44, and post-judgment interest at .48 percent.   Further, the court **ENJOINS** Defendants Molzan and Bruce from playing the copyrighted musical compositions owned by ASCAP without paying the required licensing fee.

**SIGNED** at Houston, Texas, this 24th day of July, 2009.


Nancy K. Johnson
United States Magistrate Judge